1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **CENTRAL DISTRICT OF CALIFORNIA**

10

11   TONYA C.,[1]                    ) Case No. EDCV 19-1225-JPR
                                     )
12                   Plaintiff,      )
                                     ) **MEMORANDUM DECISION AND ORDER**
13            v.                     ) **AFFIRMING COMMISSIONER IN PART**
                                     ) **AND REVERSING IN PART**
14   ANDREW M. SAUL,                 )
     Commissioner of Social          )
15   Security,                       )
                                     )
16   _____Defendant.___ )

17   **I.   PROCEEDINGS**

18       Plaintiff seeks review of the Commissioner's final decision

19   denying her applications for Social Security disability insurance

20   benefits ("DIB") and supplemental security income benefits

21   ("SSI").  The matter is before the Court on the parties' Joint

22   Stipulation, filed March 5, 2020, which the Court has taken under

23   submission without oral argument.  For the reasons discussed

24   below, the Commissioner's decision denying Plaintiff's DIB

25

26       [1] Plaintiff's name is partially redacted in line with
27   Federal Rule of Civil Procedure 5.2(c)(2)(B) and the
     recommendation of the Committee on Court Administration and Case
28   Management of the Judicial Conference of the United States.

1 | application is affirmed, the decision denying the SSI application
2 | is reversed, and this matter is remanded for further proceedings.
3 | **II.   BACKGROUND**
4 | Plaintiff was born in 1980.  (Administrative Record ("AR")
5 | 231, 238.)  She completed her GED (AR 295), obtained a vocational
6 | nursing license (id.), and worked as a cashier, hostess, nurse,
7 | and optical assistant (AR 282, 296).
8 | On January 12 and 26, 2015, Plaintiff applied for DIB and
9 | SSI, respectively, alleging that she had been unable to work
10 | since May 11, 2007, because of fibromyalgia, depression, anxiety,
11 | irritable bowel syndrome, colitis, and methicillin-resistant
12 | staphylococcus aureus ("MRSA").[2]  (AR 231, 238, 294.)  After her
13 | applications were denied initially (AR 117-26) and on
14 | reconsideration (AR 128-39), she requested a hearing before an
15 | Administrative Law Judge (AR 140-41).  One was held on May 17,
16 | 2018, at which Plaintiff, who was represented by counsel,
17 | testified, as did a vocational expert.  (See AR 35-49.)  In a
18 | written decision issued June 27, 2018, the ALJ found her not
19 | disabled.  (AR 13-34.)  She sought Appeals Council review (AR
20 | 229-30), which was denied on May 3, 2019 (AR 1-6).  This action
21 | followed.
22 | **III. STANDARD OF REVIEW**
23 | Under 42 U.S.C. § 405(g), a district court may review the
24 | Commissioner's decision to deny benefits.  The ALJ's findings and

---

[2] MRSA is a staph infection that is difficult to treat because of resistance to some antibiotics.  Methicillin-Resistant Staphylococcus Aureus (MRSA), CDC, https://www.cdc.gov/mrsa/ index.html (last visited Mar. 22, 2021).

1  decision should be upheld if they are free of legal error and

2  supported by substantial evidence based on the record as a whole.

3  See Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v.

4  Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence

5  means such evidence as a reasonable person might accept as

6  adequate to support a conclusion.  Richardson, 402 U.S. at 401;

7  Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It

8  is "more than a mere scintilla, but less than a preponderance."

9  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec.

10 Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  "[W]hatever the

11 meaning of 'substantial' in other contexts, the threshold for

12 such evidentiary sufficiency is not high."  Biestek v. Berryhill,

13 139 S. Ct. 1148, 1154 (2019).  To determine whether substantial

14 evidence supports a finding, the reviewing court "must review the

15 administrative record as a whole, weighing both the evidence that

16 supports and the evidence that detracts from the Commissioner's

17 conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

18 1998).  "If the evidence can reasonably support either affirming

19 or reversing," the reviewing court "may not substitute its

20 judgment" for the Commissioner's.  Id. at 720-21.

21 **IV.   THE EVALUATION OF DISABILITY**

22     People are "disabled" for Social Security purposes if they

23 are unable to engage in any substantial gainful activity owing to

24 a physical or mental impairment that is expected to result in

25 death or has lasted, or is expected to last, for a continuous

26 period of at least 12 months.  42 U.S.C. § 423(d)(1)(A); Drouin

27 v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

28

1        A.    The Five-Step Evaluation Process

2        An ALJ follows a five-step sequential evaluation process to

3   assess whether someone is disabled.  20 C.F.R. §§ 404.1520(a)(4),

4   416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir.

5   1995) (as amended Apr. 9, 1996).  In the first step, the

6   Commissioner must determine whether the claimant is currently

7   engaged in substantial gainful activity; if so, the claimant is

8   not disabled and the claim must be denied.  §§ 404.1520(a)(4)(i),

9   416.920(a)(4)(i).

10       If the claimant is not engaged in substantial gainful

11  activity, the second step requires the Commissioner to determine

12  whether the claimant has a "severe" impairment or combination of

13  impairments significantly limiting her ability to do basic work

14  activities; if not, a finding of not disabled is made and the

15  claim must be denied.  §§ 404.1520(a)(4)(ii) & (c),

16  416.920(a)(4)(ii) & (c).

17       If the claimant has a "severe" impairment or combination of

18  impairments, the third step requires the Commissioner to

19  determine whether the impairment or combination of impairments

20  meets or equals an impairment in the Listing of Impairments

21  ("Listing") set forth at 20 C.F.R., part 404, subpart P, appendix

22  1; if so, disability is conclusively presumed and benefits are

23  awarded.  §§ 404.1520(a)(4)(iii) & (d), 416.920(a)(4)(iii) & (d).

24       If the claimant's impairment or combination of impairments

25  does not meet or equal one in the Listing, the fourth step

26  requires the Commissioner to determine whether the claimant has

27

28

1   sufficient residual functional capacity ("RFC")[3] to perform her

2   past work; if so, she is not disabled and the claim must be

3   denied.   §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   The claimant

4   has the burden of proving she is unable to perform past relevant

5   work.   Drouin, 966 F.2d at 1257.   If the claimant meets that

6   burden, a prima facie case of disability is established.   Id.

7         If that happens or if the claimant has no past relevant

8   work, the Commissioner bears the burden of establishing that the

9   claimant is not disabled because she can perform other

10  substantial gainful work available in the national economy, the

11  fifth and final step of the sequential analysis.

12  §§ 404.1520(a)(4)(v), 404.1560(b), 416.920(a)(4)(v), 416.960(b).

13        B.    The ALJ's Application of the Five-Step Process

14        At step one, the ALJ found that Plaintiff had not engaged in

15  substantial gainful activity since May 11, 2007, the alleged

16  onset date.   (AR 19.)   Her date last insured was December 31,

17  2012.   (Id.)   At step two, he determined that she had severe

18  impairments of fibromyalgia, irritable bowel syndrome,

19  "recurrent" MRSA infections, asthma, "cervical degenerative disc

20  disease," carpal tunnel syndrome, bipolar disorder, post-

21  traumatic stress disorder, and "avoidant personality disorder."

22  (Id.)

23        At step three, he found that Plaintiff's impairments did not

24  

25        [3] RFC is what a claimant can do despite existing exertional
26  and nonexertional limitations.   §§ 404.1545(a)(1), 416.945(a)(1);
    see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).
27  The Commissioner assesses the claimant's RFC between steps three
    and four.   Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir.
28  2017) (citing § 416.920(a)(4)).

1 | meet or equal any of the impairments in the Listing.  (AR 19-21.)
2 | At step four, he determined that she had the RFC to perform a
3 | range of light work with the following limitations: "occasionally
4 | lift and carry 20 pounds"; "frequently lift and carry 10" pounds;
5 | "stand and walk (with normal breaks) for a total of 6 hours of an
6 | 8-hour workday"; "sit (with normal breaks) for a total of 6 hours
7 | of [an] 8-hour workday"; "occasional[ly]" perform "postural"
8 | movements; "no climbing ladders, ropes, or scaffolds"; "no
9 | unprotected heights or dangerous moving machinery"; "frequent
10 | bilaterally . . . reaching overhead, reaching all other
11 | directions, handling, fingering, feeling, pushing and pulling
12 | upper and lower"; "no concentrated exposure to operating a motor
13 | vehicle, humidity, wetness, dusts, odors, fumes, pulmonary
14 | irritants, extremes in cold, heat, and vibration"; "should be
15 | . . . within 100 yards of a bathroom"; and "unskilled work with
16 | only occasional interaction with the general public, coworkers
17 | and supervisors."  (AR 21.)
18 | The ALJ found that Plaintiff was unable to perform any past
19 | relevant work (AR 25), but she could work as a photocopy-machine
20 | operator or marker.  (AR 26).  Accordingly, he found her not
21 | disabled.  (AR 26-27.)

22 | **V.   DISCUSSION**

23 | Plaintiff alleges that the ALJ erred in evaluating the
24 | opinion of osteopath Sula Safar.  (See J. Stip. at 5-9, 14-15.)
25 | Because the ALJ failed to provide a specific and legitimate
26 | reason for giving little weight to that opinion, the matter must
27 | be remanded for further analysis and findings on the application
28 | for SSI.

1          A.    Applicable Law

2          Three types of physicians may offer opinions in Social

3  Security cases: those who directly treated the plaintiff, those

4  who examined but did not treat the plaintiff, and those who did

5  neither.  See Lester, 81 F.3d at 830.  A treating physician's

6  opinion is generally entitled to more weight than an examining

7  physician's, and an examining physician's opinion is generally

8  entitled to more weight than a nonexamining physician's.  Id.;

9  see §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2).[4]

10         The ALJ may discount a physician's opinion regardless of

11 whether it is contradicted.  Magallanes v. Bowen, 881 F.2d 747,

12 751 (9th Cir. 1989); see also Carmickle v. Comm'r, Soc. Sec.

13 Admin., 533 F.3d 1155, 1164 (9th Cir. 2008).  When a doctor's

14 opinion is not contradicted by other medical-opinion evidence,

15 however, it may be rejected only for a "clear and convincing"

16 reason.  Magallanes, 881 F.2d at 751 (citations omitted);

17 Carmickle, 533 F.3d at 1164 (citing Lester, 81 F.3d at 830-31).

18 When it is contradicted, the ALJ need provide only a "specific

19 and legitimate" reason for discounting it.  Carmickle, 533 F.3d

20 at 1164 (citing Lester, 81 F.3d at 830-31).  The weight given a

21 doctor's opinion, moreover, depends on whether it is consistent

22 with the record and accompanied by adequate explanation, among

23 other things.  See §§ 404.1527(c), 416.927(c); see also Orn v.

24

25         [4] For claims filed on or after March 27, 2017, the rules in
26 §§ 404.1520c and 416.920c (not §§ 404.1527 and 416.927) apply.
   See §§ 404.1520c, 416.920c (evaluating opinion evidence for
27 claims filed on or after Mar. 27, 2017).  Plaintiff's claims were
   filed before March 27, 2017, however, and the Court therefore
28 analyzes them under former §§ 404.1527 and 416.927.

1  <u>Astrue</u>, 495 F.3d 625, 631 (9th Cir. 2007) (factors in assessing

2  physician's opinion include length of treatment relationship,

3  frequency of examination, and nature and extent of treatment

4  relationship).

5        B.   <u>Relevant Background</u>

6        On October 26, 2016, Dr. Safar completed a preprinted

7  "MEDICAL OPINION RE: ABILITY TO DO WORK-RELATED ACTIVITIES

8  (PHYSICAL)."  (AR 1459-61.)  Dr. Safar's check-box responses

9  indicated that Plaintiff could lift no more than 10 pounds

10 occasionally and less than 10 pounds frequently, stand and walk

11 less than two hours during an eight-hour day, sit less than two

12 hours during an eight-hour day, and sit or stand a maximum of 45

13 minutes before needing to change position.  (AR 1459.)  The

14 doctor opined that Plaintiff needed to walk around for 45 minutes

15 every 45 minutes, have the opportunity to shift at will from

16 sitting or standing and walking, and lie down at unpredictable

17 intervals every four to six hours.  (AR 1460.)  She could never

18 twist, stoop, bend, crouch, or climb stairs or ladders.  (<u>Id.</u>)

19 She should avoid even moderate exposure to wetness, humidity,

20 noise, fumes, odors, dust, gases, and poor ventilation and all

21 exposure to extreme cold and heat and hazards.  (AR 1461.)  Her

22 impairments would cause her to be absent from work more than

23 three times a month.  (<u>Id.</u>)

24      The statement noted that Plaintiff had "severe

25 fibromyalgia" and a "bulging disc" (AR 1460), and the

26 "[m]edication [used] to treat the pain cause[d] sedation" (AR

27 1461).  The opinion did not indicate to what period it applied

28 (AR 1459-61), but the earliest treatment record from Dr. Safar

1  was dated April 11, 2016.  (AR 2324; see also J. Stip. at 7.)

2      The ALJ gave "very little weight" to Dr. Safar's opinion.

3  (AR 24.)  He erroneously concluded that the form was completed by

4  a "Sula Sator," from whom there were no supporting treatment

5  records.  (AR 23.)  Indeed, the ALJ only "presumed" that "Sator"

6  was even a doctor.  (AR 23 n.1.)  Because "there [were] no

7  records from [the doctor] to compare [the assessed] limitations

8  to in order to determine whether they [were] supported by [the]

9  examinations and treatment of [Plaintiff]," he assigned them

10 little value.  (AR 23-24.)  The only other reason he gave for

11 rejecting the functional assessment was that "the limitations

12 opined [were] not consistent with the records that show[ed]

13 normal examination signs despite allegations of pain and

14 fatigue."  (Id. (citations omitted).)  Therefore, they were "not

15 supported by or consistent with the record[]."  (AR 24.)

16      C.   Analysis

17      As an initial matter, nothing indicates that Dr. Safar's

18 opinion relates to Plaintiff's limitations on or before her date

19 last insured.  As noted, Dr. Safar's October 2016 opinion did not

20 state to what period it applied (AR 1459-61), and the earliest

21 record of treatment from Dr. Safar is from April 2016 (see AR

22 2324), over three years after Plaintiff's December 31, 2012 date

23 last insured (see AR 19).  Thus, the doctor's opinion has no

24 bearing on the DIB application, and Plaintiff has not argued

25 otherwise.  See Grace E.F. v. Saul, No. 2:18-cv-09905-AFM, 2019

26 WL 6135029, at *6 (C.D. Cal. Nov. 19, 2019) (finding records from

27 over one year after date last insured not relevant to plaintiff's

28 DIB claim when nothing in them purported to concern plaintiff's

9

limitations on or before date last insured).  Because Plaintiff has asserted no other error on appeal, the DIB decision is affirmed.

As to her application for SSI, Dr. Safar's opinion was inconsistent with that of consultative internist John Godes, who opined that Plaintiff was capable of a significantly wider range of work, including lifting and carrying 50 pounds occasionally and 25 pounds frequently, standing and walking for six hours of an eight-hour workday, sitting for six hours of an eight-hour workday, and pushing and pulling without limitation.  (AR 1489.) Therefore, the ALJ needed to provide only a "specific and legitimate reason" for discounting Dr. Safar's opinion, Carmickle, 533 F.3d at 1164 (citation omitted), but he failed to do so.

To start, the ALJ misread Dr. Safar's signature as "Sator" and therefore erroneously concluded that "there [were] no records from [the doctor] to . . . determine whether they . . . supported" the limitations imposed.  (AR 23.)  On the contrary, such treatment notes are in the record.  (See, e.g., AR 2234-61, 2320-24.)  Further, because the ALJ failed to recognize that Dr. Safar completed the assessment form, he was also unaware of the doctor's credentials as an osteopath and only "presumed" a medical degree.  (AR 23 n.1.)

The ALJ also discounted Dr. Safar's opinion because "the limitations opined [were] not consistent with the records that show[ed] normal examination signs despite allegations of pain and fatigue."  (AR 23-34 (citations omitted).)  He erred, however, in not specifically identifying which aspects of Dr. Safar's opinion

were inconsistent with which medical evidence. See Embrey v.
Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) (holding that ALJ's
determination that doctors' opinions were contrary to objective
findings, including "relative lack of positive findings," was not
sufficiently specific because ALJ provided only "conclusion" and
did not "explain" why his "interpretation . . . rather than the
doctors'" was correct); Weiskopf v. Berryhill, 693 F. App'x 539,
541 (9th Cir. 2017) (ALJ's recitation of portions of physician's
treatment notes and statement that physician's opinion was
inconsistent with notes failed to set forth specific and
legitimate reason for rejecting opinion). The ALJ cited several
treatment notes that he stated "show[ed] normal examination
signs" (AR 23), but he did not identify what examination findings
were normal or explain how those normal findings were
inconsistent with any of the limitations Dr. Safar assessed.
Therefore, the ALJ's analysis "does not achieve the level of
specificity" required by the Ninth Circuit. Embrey, 849 F.2d at
421.

The Court cannot conclude that the errors were harmless.
The ALJ did not compare Dr. Safar's treatment records to the
limitations the doctor imposed "to determine whether they [were]
supported by [the] examinations and treatment of [Plaintiff]."
(AR 23.) The Court cannot predict how the ALJ would have
analyzed the issue had he identified a treating osteopath as the
author of the assessment and homed in on Dr. Safar's treatment
notes in the more than 3300 pages of the record. Cf. Shepard v.
Colvin, No. CV 12-10468-VBK., 2013 WL 5183462, at *1 (C.D. Cal.
Sept. 11, 2013) (stating that court could not "engage in a

1  speculative, predictive exercise" of how Commissioner would have

2  evaluated new evidence that Appeals Council articulated no reason

3  for rejecting).  And the VE testified at the hearing that there

4  would be no work for a person who could perform only less than

5  sedentary work and would miss three or more days of work a month,

6  as Dr. Safar opined.  (AR 47-48.)

7       Although there were several medical opinions that conflicted

8  with Dr. Safar's, the ALJ did not rely on the findings or

9  opinions of those providers to give Dr. Safar's opinion little

10  weight.  See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219,

11  1225 (9th Cir. 2009) (district court must "review the ALJ's

12  decision based on the reasoning and factual findings offered by

13  the ALJ — not post hoc rationalizations that attempt to intuit

14  what the adjudicator may have been thinking" (citations

15  omitted)).  Indeed, although Defendant points to the contrary

16  opinion of Dr. Godes as supporting the ALJ's rejection of Dr.

17  Safar's opinion (see J. Stip. at 10-11), the ALJ in fact rejected

18  Dr. Godes's opinion, too (see AR 23).

19       For all these reasons, the ALJ failed to provide a specific

20  and legitimate reason for discounting Dr. Safar's functional

21  assessment, and the error was not harmless.

22       When, as here, an ALJ errs, the Court generally has

23  discretion to remand for further proceedings.  See Harman v.

24  Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended).  When

25  no useful purpose would be served by further administrative

26  proceedings, however, or when the record has been fully

27  developed, it is appropriate under the "credit-as-true" rule to

28  direct an immediate award of benefits.  Id. at 1179 (noting that

1 "the decision of whether to remand for further proceedings turns

2 upon the likely utility of such proceedings"); see also Garrison

3 v. Colvin, 759 F.3d 995, 1019-20 (9th Cir. 2014).

4     Here, the record has not been fully developed, as the ALJ

5 did not understand who "Sator" was and thus did not have the

6 opportunity to compare the doctor's opinion to the corresponding

7 treatment notes and assess it in the proper context.

8     If on remand the ALJ chooses to again give very little

9 weight to Dr. Safar's opinion, he can then provide an adequate

10 discussion of the reasons why.  Because other doctors found that

11 Plaintiff could work with limitations, as noted by the ALJ (see

12 generally AR 105-06, 1483-90; see also J. Stip. at 10-11

13 (Defendant arguing same)), the Court has serious doubt as to

14 whether she was disabled during any or all of the relevant

15 period.  For this reason, too, remand is appropriate.  See

16 Garrison, 759 F.3d at 1021 (recognizing flexibility to remand for

17 further proceedings when "record as a whole creates serious doubt

18 that [plaintiff] is, in fact, disabled").

19 **VI.   CONCLUSION**

20     Consistent with the foregoing and under sentence four of 42

21 U.S.C. § 405(g), IT IS ORDERED that judgment be entered AFFIRMING

22 the Commissioner's decision denying Plaintiff's DIB application,

23 REVERSING the Commissioner's decision denying Plaintiff's SSI

24 application, GRANTING Plaintiff's request for remand, and

25 REMANDING this action for further proceedings consistent with

26 this Memorandum Decision.

27 DATED: March 23, 2021

JEAN ROSENBLUTH
U.S. Magistrate Judge

28

13